**Ron CHECKI, Plaintiff-Appellant,**

v.

**Richard WEBB, et al.,
Defendants-Appellees.**

No. 85-3200.

United States Court of Appeals,
Fifth Circuit.

March 24, 1986.

Randolph J. Waits, Emmett, Cobb, Waits & Kessenich, New Orleans, La., Kleinpeter & Schwartzbert, Robert E. Kleinpeter, Baton Rouge, La., for plaintiff-appellant.

Stephen C. Riedlinger, Baton Rouge, La., for defendants-appellees.

Before JOLLY, HILL, Circuit Judges, and HUNTER *, Senior District Judge.

* Senior District Judge of the Western District of Louisiana, sitting by designation.

EDWIN F. HUNTER, Jr., Senior District Judge:

Appellant Ron Checki appeals from the dismissal of his section 1983 action against appellee state police officers, the State of Louisiana and the Louisiana State Police. Checki alleged that, while he rode as a passenger in a private automobile, appellee police officers intentionally exposed him to severe physical and mental harm in their efforts to stop the automobile, then physically abused him at a police roadblock. Because Checki's action was improperly dismissed as to the police officers, we reverse and remand.

On 22 November 1983, Appellant Checki filed this action in the Eastern District of Louisiana, naming "the State of Louisiana", the "Louisiana State Police", and Louisiana State Troopers Webb and Allison as defendants. The basis for Checki's lawsuit occurred on 4 December 1982, when he was a passenger in a car traveling on Interstate 10 from New Orleans to Baton Rouge. Checki observed what appeared to be an Oldsmobile rapidly approaching the rear of his car. Inside that automobile were two men wearing cowboy hats and a woman. Neither Checki nor his driver knew that the Oldsmobile was an unmarked state police vehicle, or that the men inside were state troopers Allison and Webb.

Alarmed at the tailgating, Checki's car was forced to take evasive action, which included accelerating to speeds in excess of 100 M.P.H. Allison and Webb pursued at times tailgating to within two to three feet of the Checki vehicle. It was not until the chase consumed approximately 20 miles in the Eastern District of Louisiana that Allison turned on his vehicle's red grill lights and siren. Nevertheless, neither Checki nor his driving companion believed that the pursuers were police.

Checki and his companion, fearing for their physical safety, "took the Sorrento

exit off ... Interstate 10 ... in an effort to escape" the pursuing vehicle. They had now entered into a locality located within the boundaries of the Middle District of Louisiana. They were stopped at a roadblock erected by the state police, approximately thirty-one miles from the point of which they had first observed Allison and Webb's vehicle. Shortly after Checki and his companion identified themselves, Allison and Webb arrived at the scene. Checki alleges that Webb, acting "without probable cause, or rational reason," handcuffed him and then struck him about the face with his revolver, causing severe facial injuries. Checki also alleges that Webb, before he was restrained by a fellow state trooper, broke Checki's companion's arm and subjected him to verbal abuse.

Service of process against the State of Louisiana and the Louisiana State Police was accomplished promptly, well within the one year of the incident at issue.[1] Substantial difficulty was encountered in obtaining service upon defendant, Webb, as he had left the employ of the State Police and had moved to Shreveport, Louisiana. Service on Webb was made in January of 1984. Allison was served on December 27, 1983. Counsel agree that the appropriate period of limitation within which to file a section 1983 suit in Louisiana is the one year period provided under La.Civ.Code Ann. article 3492 (West Supp.1986) (former Art. 3536(1),

which commences to run from the day injury or damage is done). The trial court treating the motion to dismiss as one for summary judgment held that the suit was not filed in a proper venue, and that neither Webb nor Allison were served within the one year prescriptive period. He then proceeded to hold that under Louisiana Law, the period of prescription was not tolled by the filing in an improper venue until the defendant is actually served with process. La.Civ.Code Ann. art. 3462 (West Supp. 1982)[2] *Calhoun v. Ford,* 625 F.2d 576 (5th Cir.1980). The suits against Webb and Allison were dismissed because they had not been served within the one year prescriptive period. This appeal followed.

## APPLICABILITY OF ARTICLE 3462–LA.CIVIL CODE ANN.

Checki contends that application of La. Civil Code Art. 3462 rather than Fed.R. Civ.P. 3 [3] was error. The argument is that we have here a federal question case and the filing of suit operated to toll limitations, regardless of state tolling rules. *Caldwell v. Martin Marietta Corporation,* 632 F.2d 1184, 1188 (5th Cir.1980) (Title VII, 1981 claims). Resolution of this issue turns on an interpretation of 42 U.S.C. § 1988, which provides that the civil rights acts borrow state law when necessary as long as the state law "is not inconsistent with" federal law.[4] The Supreme Court has interpreted section 1988 to require ap-

---

1. The District Court dismissed as to the state defendants finding that the suit against them was barred by sovereign immunity under the Eleventh Amendment. This ruling is not challenged on appeal.

2. In relevant part Article 3462 of the Louisiana Civil Code provides:

   "If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period".

3. Rule 3 provides: "a civil action is commenced by filing a complaint with the court".

4. Section 1988 provides:

   The jurisdiction in civil and criminal matters conferred on the district courts by the provi-

sions of this [Chapter and Title 18], for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, *as modified and changed by the* constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

plication of state tolling rules unless they are " 'inconsistent' with the policies underlying § 1983." *Board of Regents v. Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440, 449 (1980). In *Tomanio* the court held that plaintiff's section 1983 claim was barred by New York's statute of limitations, because New York law did not provide for tolling of the statute during the pendency of a related, but independent cause of action. In general, state policies of repose are not inconsistent with section 1983. *Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797. Under Louisiana law, which the Supreme Court in *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) has held to be applicable in section 1983 actions, the statute of limitations is interrupted only by the filing of a suit in a court of competent jurisdiction within the prescriptive period. (*See also Washington v. Breaux, et al*, 782 F.2d 553 (5th Cir. 1986). We discern no identifiable policy behind section 1983 that conflicts with article 3462 of the Louisiana Civil Code.

■ The conflict between Rule 3 and the Louisiana statute is actually created by the gloss placed on Rule 3. "[T]here is no direct conflict because Rule 3 simply does not address itself to the question of when the prescriptive period is tolled." *Calhoun v. Ford*, 625 F.2d 576, 577 (5th Cir.1980). Although *Calhoun* was a diversity case applying state law, the court was first required to determine whether a conflict existed between state and federal law. The holding of *Calhoun* is strong and controlling precedent. Overall, the Supreme Court has warned that "[u]ntil Congress enacts a federal statute of limitations to govern § 1983 litigation, comparable to the statute it ultimately enacted to solve the analogous problems presented by borrowing state law in federal antitrust litigation,

federal courts must continue the practice of 'limitations borrowing' outlined in *Tomanio*." *Chardon v. Soto*, 462 U.S. 650, 662, 103 S.Ct. 2611, 2619, 77 L.Ed.2d 74, 84 (1983).

The trial court correctly concluded that Article 3462 governs the determination of when plaintiff's suit was commenced for purposes of deciding whether the prescriptive period was tolled before it expired.

## VENUE

■ The determination of where "the claim arose" for purposes of federal venue under 28 U.S.C. § 1391 [5] is a federal question whose answer depends on federal law.[6] In dismissing plaintiff's action on rehearing, the District Court opined that "[c]ommon sense dictates" that venue is not proper in the Eastern District. Checki argues that, since the claim arose in both the Eastern and Middle Districts, he was free to file this action in the Eastern District and assert proper venue. *See Johnson v. Mississippi*, 78 F.R.D. 37, 40–41 (N.D.Miss.1977), remanded on other grounds, 586 F.2d 387 (5th Cir.1978). Although it is undisputed that the high-speed chase commenced and continued for more than 20 miles in the Eastern District, appellees discount the significance of the chase itself; instead, they argue, the constitutional tort should be deemed to have been committed only at the Middle District roadblock. The district court agreed with appellees. We do not.

It is often impossible to isolate one judicial district as the district where the claims arose. Recent jurisprudence has recognized such difficulties, consistently holding that the exercise of determining the single district where the claim arose is sometimes unnecessary and unrealistic. *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir.1976). In-

---

**5.** Section 1391(b) provides:
"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

**6.** *LeRoy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 161 L.Ed.2d 464, 473 n. 15 (1979).

deed, in both *U.S. v. Rundel*, 371 F.Supp. 252 (E.D.Penn.1974) and *Accardi v. United States*, 356 F.Supp. 218 (S.D.N.Y.1973), the Courts clearly indicate the venue would have been equally "correct" in other judicial districts, while determining that venue was proper in their own districts. *See also Tefal S.A. v. Products International Co.*, 529 F.2d 495 (3rd Cir.1976); *Commercial Lighting Products, Inc. v. United States District Court*, 537 F.2d 1078 (9th Cir. 1976); *Johnson v. Mississippi*, 78 F.R.D. 37 (N.D.Miss.1977).

The Supreme Court of the United States seems sympathetic to the notion that despite the literal language of Section 1391(b), there are cases in which a claim may properly be said to arise in more than one district. We refer to the court's reference to "the occasional fictive assumption that a claim may arise in only one district." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184–85, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464, 474 (1979). We hasten to add that the Supreme Court left the question undecided and in any event, did not define the "unusual" case in which more than one district would be a proper venue.

■ Where a citizen suffers physical injury due to a police officer's *negligent use* of his vehicle, no section 1983 claim is stated. *Cannon v. Taylor*, 782 F.2d 947, 948–50 (11th Cir.1986). It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle. Factual development in this case could lead to a jury question whether Webb and Allison's car-chasing actions were "inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience[.]" The trier of fact will have to determine whether Webb and/or Allison crossed the constitutional

line that would make their pursuit and harassment actionable under section 1983.

■ It cannot reasonably be argued that no serious physical danger confronts civilians who are forced to travel at speeds over 100 mph in their attempt to flee a terrorizing police officer. Furthermore, there is no valid reason for insisting on physical injury before a section 1983 claim can be stated in this context. A police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause *physical* injury, but he has certainly laid the building blocks for a section 1983 claim against him. Similarly, where a police officer uses a police vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking to the conscience, a court may conclude that the officers have crossed the "constitutional line." The standard for making this determination has been articulated time and again by this court. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981); *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir.1986); *Hedrix v. Matlock*, 782 F.2d 1273, 1274 (5th Cir.1986).

■ The chase for some 25 miles in the Eastern District of Louisiana was in fact the intentional initiation of the whole affair. The two districts (Eastern and Middle of Louisiana) join each other. New Orleans in the Eastern is only 81 miles from Baton Rouge, in the Middle District. Witnesses will be equally available in either. The accessibility of other relevant evidence and the convenience of the parties will be equally accommodated in New Orleans or Baton Rouge. This is clearly one of those cases where there are "two districts that with approximately equal plausibility ... may be assignees as the locus of the claim", *LeRoy*, 443 U.S. at 185, 99 S.Ct. at 2717, 61 L.Ed.2d at 475. Because this is true, either of the districts is a proper venue in which plaintiff could commence his action. The suit was filed in a proper

venue. We are compelled to reverse and remand for further proceedings consistent with this opinion.[7a,7b]

REVERSED and REMANDED.

7a. As an alternative basis for reversing the decision of the district court, plaintiff argues that prescription against Webb and Allison was interrupted when timely service was made on state defendants. Under La.Civ.Code Ann. art. 3503 (West Supp.1986) when prescription is interrupted against a solidary obligor, the interruption is effective against all such obligors. If one accepts as true the allegations of the petition, the State and individual defendants would be liable in solido within the definition of La. Civ.Code Ann. art. 1794. *Dean v. Nunez,* 469 So.2d 254 (La.App.), *writ denied,* 475 So.2d 357 (La.1985); *O'Brien v. Delta Gas, Inc.,* 426 So.2d 262, 271 (La.App.), *writ denied,* 433 So.2d 163 (La.1983). It would be difficult to argue that the mere fact that the state defendants cannot be sued in federal court breaks the "insolido" claim notice link with Allison and Webb. Article 1794 focuses on joint responsibility for the tortious conduct, not on whether the alleged injury can be redressed in the same judicial forum. Because of our resolution of the venue issue, we need not address this argument, but we do note that the fundamental purpose of prescription statutes are to protect against lack of notification of a formal claim, not against pleading mistakes that one might make in filing the complaint. *Groir v. South Louisiana Medical Center,* 475 So.2d 1040, 1043 (La.1985).

7b. We are fully cognizant of Checki's contention that if plaintiff did indeed make an error in choice of venue, that error should not deprive him of the relief of transfer under 28 U.S.C. section 1406(a), which reads:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The section 1406(a) issue is irrelevant here because of our resolution of the venue problem. *See Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 430 n. 7, 85 S.Ct. 1050, 1055 n. 7, 13 L.Ed.2d 941, 946 n. 7 (1965) ("Numerous cases hold that when dismissal of an action for improper venue would terminate rights without a hearing on the merits because plaintiff's action would be barred by a statute of limitations, 'the interest of justice' requires that the cause be transferred.") (citations omitted).