**George J. TIMKO, Personal Representative of the Estate of Daniel T. Timko, Plaintiff,**

v.

**CITY OF HAZLETON and Michael Conway, Defendants.**

**Civ. No. 85–1121.**

United States District Court, M.D. Pennsylvania.

Aug. 12, 1986.

Denis V. Brenan, Morgan, Lewis & Bockius, Philadelphia, Pa., James S. Palermo, Hazleton, Pa., for plaintiff.

John C. McNamara, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff filed this complaint on August 5, 1985, invoking this court's jurisdiction under 28 U.S.C. §§ 1331 and 1343. Relief is sought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Defendants, City of Hazleton ("City") and Michael Conway ("Conway"), filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, a brief in support thereof and supporting documentation on April 29, 1986. Plaintiff opposed the motion on May 22, 1986 and June 13, 1986. Reply time having lapsed, the matter is ripe for disposition. For the reasons set forth below, defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be granted.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed.

---

1. Pursuant to Fed.R.Civ.P. 12(b), the court has been presented with and is considering matters outside the pleadings. Accordingly, the instant motion will be treated as a Motion for Summary Judgment.

R.Civ.P. 56. A court may not resolve conflicting factual contentions on a motion for summary judgment and the facts must be viewed in a light most favorable to the non-moving party. *See e.g., Peterson v. Lehigh Valley District Council,* 676 F.2d 81 (3d Cir.1982). While questions concerning the existence of genuine issues of fact must be resolved against the moving party, conflicts of fact do not preclude summary judgment unless they are material to the case. *See e.g., Tarasi v. Pittsburgh National Bank,* 555 F.2d 1152 (3d Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977). As the United States Supreme Court recently held,

> [i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, there is no requirement that the moving party support its motion with material negating the opponent's claim. *Id.* Mindful that the parties in this case have been given ample opportunity to support their respective positions [2] and in light of this standard, the undisputed facts relevant to the instant motion are as follows.

## FACTUAL BACKGROUND

Plaintiff brings this action as the personal representative of the estate of Daniel G. Timko ("Timko"). On August 5, 1983, at approximately 12:30 a.m., Conway, while on duty as a Hazleton City police officer, drove into the parking lot of the Hazleton Shopping Center on West Broad Street, Hazleton, Pennsylvania. *See* Complaint, Document 1 of the Record at ¶ 6 ("Complaint") and Answer, Document 6 of the Record at ¶ 6 ("Answer"). Upon entering the parking lot, Conway observed a yellow 1972 Cadillac stopped approximately sixty-five (65) feet in the rear of a Super Saver

grocery store with its lights on and engine running. *See* Defendants' Statement of Facts Not in Dispute, Document 15 of the Record; Memorandum of Law in Support of Defendants' Motion to Dismiss at 2 (Defendants' Statement); Complaint at ¶ 7; Transcript of March 20, 1984 at 37. No stores in the shopping center were open at the time Conway observed this vehicle stopped behind the store. Transcript at 37. The driver and sole occupant of the vehicle was Steven A. Belusko (Belusko). As Conway drove behind the Cadillac, Belusko drove slowly away, whereby Conway signaled for Belusko to pull over. Belusko did not stop, and as the Cadillac accelerated, Conway turned on the overhead light of the police car and blew the horn. The Cadillac proceeded through the parking lot and traveled east on Broad Street at a high rate of speed. Belusko traveled up to sixty (60) miles per hour. Complaint and Answer at ¶ 13. Conway pursued Belusko, at some point turning on the police car's siren. Belusko ran a red light at the intersection of Broad and Laurel Streets and struck a 1979 Pontiac driven by Timko. Timko was thrown from his vehicle and subsequently pronounced dead at Hazleton State Hospital at approximately 12:50 A.M. At the time of the collision, Conway, who was following Belusko, was approximately two hundred fifty (250) feet away from the intersection.

Plaintiff avers that the City breached the duty of care owed Timko "by means of the negligent and reckless acts and omissions of its agencies, representatives and/or employees...." Complaint at ¶ 19. Specifically, plaintiff maintains that the City is liable for:

(a) failing to adopt and enforce appropriate and reasonable policies, customs, procedures and practices relative to the investigation and apprehension of suspected offenders; the initiation and conduct of high speed police pursuits; and the operation of emergency vehicles;

(b) failing to adequately train and supervise Conway in the proper procedures

---

**2.** The complaint was filed on August 5, 1985, more than one (1) year ago.

for the investigation and apprehension of suspected offenders; the initiation and conduct of high speed police pursuits; and the operation of emergency vehicles;

(c) implicitly or explicitly authorizing, approving, and/or knowingly acquiescing in the use of improper procedures for the investigation and apprehension of suspected offenders; the initiation and conduct of high speed police pursuits; and the operation of emergency vehicles.

*Id.*

Liability of Conway is based on Conway's alleged:

(a) reckless and negligent operation of his automobile;

(b) reckless and negligent initiation of a high speed pursuit under circumstances posing a grave risk of injury to persons and property;

(c) reckless and negligent attempt to apprehend and/or arrest Belusko without probable cause and without a reasonable belief that a crime had been committed;

(d) reckless and negligent failure to discontinue a high speed pursuit despite the presence of circumstances posing a grave risk of injury to persons and property;

(e) reckless and negligent failure to take less dangerous, but equally effective means of investigating the Belusko vehicle;

(f) violations of the motor vehicle laws of the Commonwealth of Pennsylvania;

(g) negligent and reckless disregard of proper procedures and standards pertaining to the initiation and conduct of high speed pursuits.

*Id.* at ¶ 20.

In sum, plaintiff contends that Timko's death resulted from "... the negligent, reckless, and deliberately indifferent conduct of Conway" and defective policies, customs, procedures and practices of the City manifesting "deliberate indifference to a known risk of injury." *Id.* at ¶ 22.

## DISCUSSION

Initially, the court recognizes that plaintiff agrees that: (1) a municipality cannot be held liable based on the doctrine of *respondeat superior;* (2) the demand for reimbursement of medical, funeral and estate expenses of $5,500.00 has been secured by plaintiff and is unrecoverable in this action; (3) punitive damages may not be recovered from a municipality in a § 1983 action and there are no facts justifying an award of punitive damages against Conway. *See* Document 15 of the Record, Defendants' Motion to Dismiss at ¶¶ 7d, 7H and 7I; Document 16 of the Record, Plaintiff's Answer to Defendants' Motion at ¶¶ 7d, 7H and 7I.

In their motion, defendants raise several objections to plaintiff's claims. The court will examine each defendant's request for summary judgment.

### A. Defendant Conway

The United States Supreme Court has rejected the premise that the Due Process Clause of the Fourteenth Amendment and section 1983 "make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state-law tort claims." *Paul v. Davis,* 424 U.S. 693, 699, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976). More recently the court stated:

To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be adminis-

tered by the States.' (citation omitted). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

*Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). After *Daniels,* one Court of Appeals held, "... that a person injured in an automobile accident caused by the negligent, *or even grossly negligent,* operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right." *Cannon v. Taylor,* 782 F.2d 947, 950 (11th Cir.1986) (emphasis added). *Accord Checki v. Webb,* 785 F.2d 534 (5th Cir.1986) (where a citizen suffers physical injury due to a police officer's *negligent use* of his vehicle, no section 1983 claim is stated). Accordingly, plaintiff's claim against Officer Conway must fail.

At most, plaintiff avers Conway operated his police vehicle negligently and/or recklessly. In fact, the record fails to indicate that Defendant Conway was operating his vehicle at a high rate of speed or in an unreasonable manner. Conway's testimony indicates that he was "falling behind" the Cadillac as it went down Broad Street. Transcript at 49. Conway estimated his speed at around "forty miles an hour or less." *Id.* at 104. Moreover, there is no indication in the record that Conway intentionally misused his vehicle. That is, there is no factual basis for a finding that Conway's actions "were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Checki v. Webb, supra,* at 538; *see also Ellsworth v. Mockler,* 554 F.Supp. 1072 (N.D. Indiana 1983) (conduct of state officials or employees must be sufficiently

egregious as to be constitutionally tortious; finding that § 1983 action is available for every citizen injured by the negligent operation of a state owned vehicle would turn the legislative history of § 1983 on its end). This reasoning comports with the Supreme Court's recent holdings in *Daniels v. Williams, supra* and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

■ Therefore, the undisputed material facts demonstrate that Defendant Conway is entitled to judgment as a matter of law.[3] As the court in *Cannon v. Taylor, supra,* recognized, "[t]he type of negligence alleged in this case may well be actionable under state law. Automobile negligence actions are grist for the state law mill. But they do not rise to the level of a constitutional deprivation." [4] *Id.* at 950.

### B. Defendant City

Defendants raise several arguments in support of the contention that the City is entitled to judgment as a matter of law. The court will consider each argument *seriatim.*

### I.

■ Initially, similar to the argument raised concerning Defendant Conway, the City maintains that plaintiff fails to identify a particular constitutional right of which he was deprived by the City. While *Cannon v. Taylor, supra,* held that a person injured in an automobile accident caused by the operation of motor vehicle by an on-duty policeman has no § 1983 cause of action, the court went on to analyze the potential liability of the City of Columbus in light of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the City may be held liable if "... the action that is alleged to be unconstitutional implements or exe-

---

**3.** Although the issue need not be discussed in detail in light of the court's disposition of the matter, it appears that Defendant Conway may be entitled to immunity from damages in this case. In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the court reaffirmed the objectively reasonable test to be

applied in areas of wrongful search and/or arrest cases.

**4.** Furthermore, as defendants establish, an action arising from the same set of facts has been initiated in the Luzerne County Court of Common Pleas.

cutes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services, supra,* at 690, 98 S.Ct. at 2035. As the Supreme Court stated:

Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person', by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* at 690–91, 98 S.Ct. at 2035–36. Accordingly, plaintiff's allegations that the City's policy, *i.e.,* failure to train or adopt adequate guidelines, was responsible for Timko's death are sufficient to implicate protected constitutional rights.

### II.

■ Defendants, however, are correct in asserting that the Due Process Clause is not implicated by allegations of mere negligent conduct by defendants. *Daniels v. Williams, supra.* Responding to the argument that this request would give rise to artful pleading to allege "more than" negligence, the court refused "... to trivialize the Due Process Clause in an effort to simplify constitutional litigation." *Id.* 106 S.Ct. at 667. In *Daniels,* plaintiff did concede that defendant was at most negligent and the court stated, "[a]ccordingly, this case affords us no occasion to consider whether something less than intentional

conduct, such as recklessness or 'gross negligence', is enough to trigger the protections of the Due Process Clause." *Id.* at 667 n. 3. *Accord Davidson v. Cannon, supra* (where government official is merely negligent in causing injury, no procedure for compensation is constitutionally required). Thus, this court must consider whether plaintiff's claims of grossly negligent or reckless conduct on the City's behalf are enough to implicate the Due Process Clause. *See Sourbeer v. Robinson,* 791 F.2d 1094 (3d Cir.1986) (cases where "negligent" deprivation is alleged are of a highly unusual nature because defendants were probably not aware of deprivations triggering due process concerns until after the fact).

In *Sourbeer,* the court, referring to cases where the deprivation of life, liberty or property upon which the case was predicated was not intentional, stated, " '[t]o hold that injury caused by such conduct is a *deprivation* within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.' " *Id.* at 1105 (citation omitted) (emphasis in original). In so doing, the court acknowledged an earlier reference in *Davidson v. O'Lone, infra,* that an infringement of a liberty interest by gross negligence is sufficient to assert a § 1983 action.[5] *Id.* at 1104 n. 9. In sum, it is unclear whether gross negligence or reckless conduct can ever amount to a deprivation within the Due Process Clause.[6] In any event, in this case, the court will assume that plaintiff sufficiently alleges "conduct" by the City which may amount to a deprivation of life without due process. *See Grandstaff v. City of Borger,* 767 F.2d

---

**5.** In *Davidson v. O'Lone,* 752 F.2d 817, 828 (3d Cir.1984), *aff'd, Davidson v. Cannon, supra,* our Court of Appeals in *banc* stated, "[w]e thus reaffirm that actions may be brought in federal court under § 1983 when there has been infringement of a liberty interest by intentional conduct, gross negligence or reckless indifference, or an established state procedure." This statement, however, was not joined in by a majority of the court. *Id.* at n. 8. In fact, as discussed, the court in *Sourbeer* acknowledged this statement, but recognized that, "... even in *Davidson* the reference to gross negligence was *dicta* (the case involved negligence) and was not

joined by a majority of the court." *Id.* at 1104 n. 9.

**6.** The Supreme Court recognized that it recently reserved the general question of whether something less than intentional conduct, such as recklessness or gross negligence is enough to trigger the protections of the Due Process Clause. *See Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In so doing, the Court implied nothing as to the proper answer to this question outside the prison security context. *Id.*

**1136**

161 (5th Cir.1985), *U.S. Appeal Pending,* 54 U.S.L.W. 3664 (April 8, 1986) (a deprivation of a constitutional right occurs when a policy of the City causes the death of an individual through the actions of the City's police officers).[7]

■ In his complaint, plaintiff alleges that the City's actions were negligent and reckless thereby evidencing deliberate indifference to a known risk of injury. Complaint at ¶ 22. As such, the court assumes that a viable claim based on this conduct may exist. *See Kibbe v. City of Springfield,* 777 F.2d 801 (1st Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986) (harm caused by policy of gross negligence in police training can meet causation requirement of § 1983); *Cannon v. Taylor, supra* (at least a showing of gross negligence is necessary to establish liability for inadequate training); *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982) (training that is so reckless or grossly negligent that future police misconduct is almost inevitable or is substantially certain to result may give rise to municipal liability); *Paul v. John Wanamakers, Inc.,* 593 F.Supp. 219 (E.D.Pa.1984) (weight of authority is that grossly negligent failure to supervise is actionable under § 1983). A similar result was reached in *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979), where the court refused to grant summary judgment because the factual question of whether a police officer was grossly negligent existed. In *Popow,* the court held that gross negligence or recklessness of a municipality resulting in death was sufficient to constitute a constitutional violation. *Id.* at 1243; *see Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978).

### III.

Defendants contend that plaintiff cannot maintain an action against the city pursuant to *Monell v. Department of Social Services, supra.* In this regard, defendants assert that the City's alleged failure to train its police officers did not cause Timko's death. In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985), the court, *via* a plurality opinion, recognized that a plaintiff must establish that a city was the "person" who caused plaintiff to be subjected to the constitutional deprivation. In other words, a city may only be held liable if the deprivation was the result of municipal "custom or policy." *Id.*

In *Tuttle,* plaintiff's theory of liability was that the City's policy of training and supervising police officers resulted in inadequate training thereby causing the alleged constitutional violation, *i.e.,* the shooting of decedent by a police officer. The court first recognized that:

[i]n the first place, the word 'policy' generally implies a course of action consciously chosen from among various alternatives (footnote omitted); it is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training', unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate.

*Id.* 105 S.Ct. at 2436.

The court went on to hold:

Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. *But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipali-*

---

**7.** In *Grandstaff,* the City of Borger police mistook plaintiff for a fugitive and killed him. A jury found that the city was grossly negligent in failing to properly train its police officers and

that serious incompetence or misbehavior was general or widespread throughout the police force. The Court of Appeals affirmed this portion of the jury's decision.

*ty (footnote omitted), and the causal connection between the 'policy' and the constitutional deprivation* (footnote omitted).

*Id.* (emphasis added).[8] Accordingly, mere description of an act as a "policy" or "procedure" does not meet the threshold for a § 1983 claim. *See Estate of Bailey v. County of York,* 768 F.2d 503, 506 (3d Cir.1985).[9]

In *Mariani v. City of Pittsburgh,* 624 F.Supp. 506 (W.D Pa.1986), the court considered a Motion for Summary Judgment by the Defendant City. The court recognized that to establish municipal liability a plaintiff must (1) identify the challenged policy or custom, (2) attribute it to the city, and (3) show a causal connection between the execution of that policy and the injury suffered. *Id.* at 509 *citing Kranson v. Valley Crest Nursing Home,* 755 F.2d 46, 51 (3d Cir.1985).

As discussed, a policy or custom is a course of action consciously chosen from among various alternatives. *Id.* In *Mariani,* plaintiff alleged that through gross negligence and deliberate indifference to plaintiff's constitutional rights, the City adopted by implication customs or policies of failure to properly train or control its police officers. The court granted the City's Motion for Summary Judgment finding that the facts failed to establish a causal link between the policy and the deprivation. Moreover, there was no support for the claim that the officers in question had, in fact, been improperly trained.

█ This court reaches a similar result in this case. Defendants maintain that Defendant Conway was never involved in or associated with a collision with a motor vehicle prior to the accident in question. Moreover, it appears that prior to this accident, the City never received a notice or a complaint concerning motor vehicle pursuits involving the City Police Department.[10] While the City did not have a policy governing the subject of "police pursuit", a specific rule was promulgated concerning an officer's use of the police cruisers lights and siren. *See* Document 16 of the Record at 2 and Document 15 of the Record at 15. Finally, Defendant Conway received a Certificate of Completion certifying that he completed training in accord-

---

8. In a footnote, the court stated:
   We express no opinion on whether a policy that itself is not unconstitutional, such as the general 'inadequate training' alleged here, can ever meet the 'policy' requirement of *Monell.* In addition, even assuming that such a 'policy' would suffice, it is open to question whether a policymaker's 'gross negligence' in establishing police training practices could establish a 'policy' that constitutes a 'moving force' behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required. *Id.* at n. 7. *See supra* at 10–13. Similarly, in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986), the court stated, "[w]e hold that municipal liability under § 1983 attaches *where—and only where* —a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." (emphasis added).

9. In *Estate of Bailey, supra,* our Court of Appeals stated,
   "the allegations of the complaint may fairly be read to allege conduct rising to the level of deliberate indifference, reckless disregard, or gross negligence by the agency and by its supervisory officials fairly attributable to poli-

cies and practices of the agency (footnote omitted). They allege more than the mere 'negligent monitoring of the mother's household', as stated by the dissent. They therefore adequately meet the standard of conduct encompassed by § 1983."
*Id.* at 508; *see supra* at 10–13.

10. In defendants' Memorandum in Support of their Motion for Summary Judgment, they set forth facts "which are presumably not in dispute." Document 15 of the Record at 3–4. Each of these facts designated by letters a to f, is supported by specific reference to the Record. Plaintiff's response is that, "after reasonable investigation, plaintiff is without knowledge or information to admit or deny and therefore demands strict proof thereof at trial." Document 16 of the Record. In light of the amount of discovery in this case, the court questions the propriety of this averment. Plaintiff's contention does not preclude a finding that these "facts" exist as set forth. It would be anomalous if a party could create a factual issue precluding summary judgment by simply averring a lack of knowledge. If plaintiff possessed information tending to impugn defendants' factual assertions, it was incumbent upon plaintiff to produce this information. *See Celotex Corp. v. Catrett, supra.*

ance with applicable state law. *See supra* at 1137 n. 10.

As in *Tuttle,* plaintiff in this case is attempting to establish a policy of inadequate training on the basis of one accident. *Cf. Bartholomew v. Fischl,* 782 F.2d 1148, 1154 (3d Cir.1986) (plaintiff alleged a continuing pattern of acts; language in complaint discussed a "protracted" and "ongoing" campaign to harass plaintiff). Aside from the question of whether, in fact, Defendant Conway was inadequately trained, the court finds that plaintiff fails to establish that Timko's death resulted from any policy of the City. Accordingly, plaintiff does not show a course of conduct deliberately pursued by the City, as opposed to an action taken unilaterally by a nonpolicy-making municipal employee. *See Carter v. District of Columbia,* 795 F.2d 116 (D.C. Cir.1986). *Compare Anela v. City of Wildwood,* 790 F.2d 1063 (3d Cir.1986). As in *Carter,* there is no evidence in the Record in this case which supports the § 1983 claim against the City. "The § 1983 claim against the City fails for want of proof of a persistent, pervasive practice attributable to a course deliberately pursued by official policymakers, one that caused the deprivation of constitutional rights plaintiffs experienced." *Id.* at 9; *see Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir.1986); *Titus v. Newtown Township,* 621 F.Supp. 754 (E.D. Pa.1985). As another Court of Appeals stated:

> An 'inadequate' training program alone is not ordinarily the moving force behind an injured plaintiff's harm, because the police officer who injures the plaintiff does not rely upon inadequate training as tacit approval of his conduct. It is not enough that the city could, but does not, reduce the risk of harm to the plaintiff.

*Grandstaff v. City of Borger, supra,* at 169. As discussed, in this case plaintiff points to no prior incidents of wrongful pursuit involving Defendant Conway or the Hazleton City Police force.[11] Apparently, plaintiff's primary argument is that the City's failure to have a "police pursuit" policy in effect a "policy" for which the City may be held liable under § 1983.

In *Wellington v. Daniels,* 717 F.2d 932 (4th Cir.1983), the court, while acknowledging that official policy can be inferred from a municipality's omissions, stated, "[n]evertheless, such omissions are actionable only if they constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries." *Id.* at 936. Recognizing that a number of courts found that a municipal policy of authorizing or condoning police misconduct could be inferred where the municipality has been grossly negligent in the supervision and training of its police force, the court held, "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervising personnel. (citations omitted). A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Id. Cf. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (supervisory officials must in some way participate in or encourage incident of misconduct); *Hays v. Jefferson County, supra* (failure to supervise or train offending officers is not actionable absent a showing that a specific incident of misconduct was encouraged; at a minimum, it must be shown that an official implicitly authorized, approved, or knowingly acquiesced in unconstitutional conduct); *Kibbe v. City of Springfield, supra* (city may be held liable either for failing to implement a training program or for implementing a program that was grossly inadequate to prevent the type of harm suffered by plaintiff); *Rymer v. Davis,* 775 F.2d 756 (6th Cir.1985), *U.S. Appeal Pending,* 54 U.S.L.W. 3508 (February 4, 1986).

In *Lathrop v. Township of Athens,* —— F.Supp. ——, No. 84–1216, slip op. (M.D. Pa., April 25, 1986), Judge Muir of this court considered a claim against a municipality based on allegedly improper conduct

---

**11.** While the "size" of the Hazleton City Police force does not appear in the record, on the night of the accident in question apparently only two (2) officers were on vehicle patrol.

of one of the municipality's police officers. In so doing, the court acknowledged that "... municipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 23 *citing Pembaur v. City of Cincinnati, supra.* As in *Lathrop,* plaintiff in this case does not contend that the City has a policy of condoning civil rights abuses. *Id.* Similarly, it is undisputed that the City had a regulation [12] which arguably could apply to pursuits of suspected perpetrators. In light of the facts before him, Judge Muir held:

> Thus, plaintiffs' assertion that failure to punish or train Spaulding (police officer) was tantamount to a custom or policy of civil rights abuse does not meet the requirements of the test in *Pembaur.* To hold that the Township could be liable for such alleged negative acts would expose it to liability beyond that envisioned by the court in *Monell.* (citation omitted).

*Id.* at 26–27. Noting other cases in this circuit where similar claims were dismissed for failure to plead with factual specificity, the court granted the Township's Motion for Summary Judgment. *Id.* at 27–28. *See also Cannon v. Taylor, supra* (record lacked evidence which would allow a finding that city officials disregarded instances of officer misconduct).

In *Cannon,* the court found that plaintiff produced "some evidence that there had been previous instances involving speeding without the use of lights and sirens, although it does not reveal whether these instances were the cause of any accidents, or the extent of injuries or damages involved." *Id.* at 951. In any event, the court stated:

Nor is the evidence sufficient to establish an actionable policy of inadequate training in the operation of police vehicles in excess of the speed limit. It is clear from this Court's precedents that at least a showing of gross negligence will be necessary to establish liability for inadequate training. (citation omitted).

The testimony and documentary evidence reveals that Officer Taylor received the standard policy academy training on operating his vehicle and on applicable state laws. Additionally, the state law on operating police vehicles over the speed limit was reproduced in the Columbus police manual. This Court is unwilling to say that this training procedure is so inherently inadequate as to subject the City to liability in the absence of past officer misconduct resulting from lack of training. *See Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984) ("a municipality is not liable under section 1983 for the negligence or gross negligence of its subordinate officials, including its chief of police, in failing to train the particular officer in question, in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force"). The evidence is insufficient to show a training deficiency transgressing constitutional boundaries.

*Id.* As discussed, in this case, there is no evidence of specific instances involving improper police pursuit, let alone cases where police pursuit resulted in injury to property or person.

■ Moreover, the evidence demonstrates that Defendant Conway received

---

**12.** The regulation in question, Regulation 12, states:

> When responding to an emergency, the officer on patrol shall proceed cautiously, exercising good judgment and care, having due regard to safety of life and property. No officer will use the siren or flashing lights without the permission of the shift supervisor.

*See* Document 16 of the Record at 2 n. 1. While plaintiff contests the applicability of Regulation 12 to police pursuits, and contends that violations of Regulation 12 were ignored, the court is not directed to anything in the Record indicating specific incidents when a violation of Regulation 12 caused injury to person or property.

**1140**

state mandated training concerning basic police procedures. This court finds that the facts reveal that plaintiff has not shown that the City can be held liable for a failure to train its police officers in the circumstances of this case. Furthermore, the causal connection between defendants' actions and Timko's death is questionable at best [13] and the record demonstrates that the granting of summary judgment in defendants' favor is proper.

Accordingly, on the basis of the undisputed facts, the court finds that plaintiff fails to show that the City had a policy which was the "moving force" behind the alleged constitutional violation. *See Mariani v. City of Pittsburgh, supra.* That is, not only does the record show that a policy as contemplated by *Monell* did not exist, but the facts disclose that the City's purported gross negligence or recklessness was not the "moving force" behind the alleged constitutional violation. In fact, there is a serious question whether Conway failed to adhere to a reasonable standard of care in pursuing Belusko. In any event, the City's failure to have a specific policy concerning police pursuits does not, on the basis of the record before the court, subject the City to liability pursuant to § 1983.

Inasmuch as plaintiff's federal law claims have been dismissed, the court also will dismiss the pendent state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lynn v. Smith,* 664 F.Supp. 929 (M.D.Pa.1985) (Nealon, C.J.).

An appropriate Order will enter.

13. In *Estate of Gilmore v. Buckley,* 787 F.2d 714 (1st Cir.1986), the question was whether a failure of various county officials to protect plaintiff from attack by a private third party could give rise to a cause of action pursuant to § 1983. In considering the claim, the court stated:

> For there to be a cause of action under section 1983, the state defendants must have deprived the plaintiff of a right 'secured by the Constitution and laws' of the United States.... The fourteenth amendment, however, does not protect against the deprivation of life *by any person at all,* but only against the deprivation of life *by the state* without due process. (footnote omitted) (emphasis in original). Where, as in these circumstances, the victim dies at the hands of a private individual who was neither an agent of the state nor employed by the state, can it be said that *the state* deprived her of life without due process? ... (emphasis in original).
> A growing number of courts including the Supreme Court ... have wrestled with this issue in analogous situations, answering the question whether there has been constitution-

al violation with, for the most part, a qualified 'no.' (footnote omitted). The situation in the case at bar differs markedly from that where the state defendants themselves kill the victim—as when a police officer wrongfully shoots someone, thus implicating the state directly in the taking of the victim's life. *Citing Kibbe v. City of Springfield, supra.* *Id.* at 719.
> Accordingly, in this case, it may be that the "state's" involvement was not sufficient for purposes of the Due Process Clause. As the court in *Buckley* recognized, "[b]ut if state officials (absent 'special circumstances', *infra*) do no more than act erroneously—even if the error is egregious—and the killer is not an officer of the state but is a private third party, we think the essential element of the state's having worked a deprivation is missing." *Id.* at 720 n. 10. *See also Bartholomew v. Fischl, supra* (official policy that is not unconstitutional may provide the basis for municipal liability when an official interpretation of the policy is the proximate cause of the constitutional violation).