801 F.2d 1266
 Emory CONNER, Plaintiff-Appellant,
v.
Clifford STICHER, Edward McElhenney, Jr., Steven Elkins,
John Roe and John Doe, Defendants-Appellees.
Ora CONNER, Plaintiff-Appellant,
v.
Clifford STICHER, Edward McElhenney, Jr., Steven Elkins,
Todd Brannon and Bobby Hill, Defendants-Appellees.
 Nos. 85-8828, 85-8829.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 14, 1986.
 
 Don C. Keenan, David S. Bills, William J. Berg, Ralph S. Goldberg, Atlanta, Ga., for plaintiff-appellant.
 John C. Jones, Asst. Atty. Gen., Atlanta, Ga., for Sticher.
 Kirby A. Glaze, Steven M. Fincher, Claude L. Goza, Jr., Jonesboro, Ga., for McElhenney.
 Theodore Freeman, Atlanta, Ga., for Elkins, Brannon & Hill.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before RONEY, Chief Judge, CLARK, Circuit Judge, and GIBSON*, Senior Circuit Judge.
 RONEY, Chief Judge:
 
 
 1
 Although this 42 U.S.C.A. Sec. 1983 action involves unusual activity by law enforcement officers which apparently did cause the two plaintiffs to live in fear that an accused murderer was trying to kill them, the plaintiffs have been unable to identify any accepted constitutionally protected interest upon which to base their claim. We affirm summary judgment for defendants.
 
 
 2
 The facts that led up to the law enforcement officers falsely telling the plaintiffs that they might be the target of a murderer, facts that must be accepted for summary judgment purposes, are rather bizarre. In August 1981, John Evans was murdered by Billy Joe Wallace. The prosecution of Wallace for the Evans murder was assigned to Clayton County Assistant District Attorney Clifford Sticher. Edward McElhenney was assigned as an investigator.
 
 
 3
 Neighbors of Wallace, Emory Conner and Don Ralph, voluntarily presented themselves to the Clayton County authorities as State witnesses. Don Ralph received several threatening telephone calls at his home, which he reported both to the Henry County Police Department and to Sticher and McElhenney. Sticher and McElhenney learned that Wallace had offered another inmate $200.00 to find someone to kill Ralph.
 
 
 4
 Sticher and McElhenney met with the Clayton County Chief Investigator to plan a response to this information. They developed a plan to stage an attempted murder of Ralph on the theory that Emory Conner would relay word of the attempt back to Wallace. Conner had frequent contact with Wallace because he and his wife were caring for Wallace's daughter. The defendants thought the plan would protect Ralph, since Wallace would not hire anyone else to kill Ralph if he thought the contract was being fulfilled. At the same time, they thought they would be able to obtain evidence implicating Wallace in the solicitation attempt. After Conner had told Wallace about the attempt on Ralph's life, an inmate would be bugged and hopefully elicit incriminating statements from Wallace during an "impromptu" meeting.
 
 
 5
 McElhenney called the Henry County Police Chief to ask for Henry County's cooperation. McElhenney said they had a man in jail who had been charged with murder and while awaiting trial was trying to have one of the witnesses in the murder case killed. The witness would call the police chief's office and report that he had been shot at. McElhenney requested that Henry County police respond to that call in a normal manner inasmuch as a third party, who was unidentified, was to hear about the incident and relay it to the prisoner.
 
 
 6
 McElhenney told Ralph of the plan and instructed him to be sure Conner was present when the police arrived but not to tell Conner the event was staged. When Ralph called, Henry County police officers were dispatched to the Ralph residence to take an incident report from Ralph. The Conners allege that one of the officers advised Conner to be very careful, that since Conner was also a State's witness he could be shot at next and that his grandchildren should not be left unattended.
 
 
 7
 The Conners did not discover the entire incident was a hoax until about three months later. They allege they lived in constant fear for their lives, the lives of their family members, and the safety of their property, during this three month period. The Conners restricted their activities and had to seek professional counseling.
 
 
 8
 The essential inquiry in a section 1983 action is whether the conduct deprived the individual of a right, privilege, or immunity secured by the Constitution or the laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). In the district court proceedings, the Conners referred to their "right of freedom from harm at the hands of state officials." Before this Court, they have asserted a liberty interest in the right to be free from lawless violence and the "outrageous abuse of governmental power" by state agents.
 
 
 9
 The district court held that the plaintiffs failed to allege the deprivation of a recognized liberty interest.
 
 
 10
 The court cannot find, nor has plaintiffs' attorney presented, any case involving remotely similar conduct which was held to form the basis for a Sec. 1983 action. While the court is not unsympathetic with plaintiffs, it would appear that rather than a federal cause of action, plaintiffs are actually complaining of a state law tort, the intentional infliction of emotional distress.
 
 
 11
 The Conners rely upon cases in which a party has alleged physical injury by a third person resulting from the action or omission of a state officer. See Estate of Gilmore v. Buckley, 787 F.2d 714 (1st Cir.1986) (state officials released inmate who killed plaintiff's decedent); Jones v. Phyfer, 761 F.2d 642 (11th Cir.1985) (young man released on Christmas furlough raped plaintiff); Wright v. City of Ozark, 715 F.2d 1513 (11th Cir.1983) (rape victim alleged that city officials deliberately suppressed information of prior rapes); Bowers v. DeVito, 686 F.2d 616 (7th Cir.1982) (state officials released mental patient, who killed plaintiff's decedent); Williams v. City of Boston, 599 F.Supp. 363 (D.Mass.1984) (student shot during high school football game alleged liability based on scheduling game in bad neighborhood and failing to implement safety measures to protect athletes), aff'd, 784 F.2d 430 (1st Cir.1986).
 
 
 12
 In cases involving physical injury caused at the hands of state officers, the state actor has invaded the victim's liberty interest in bodily security. In Hall v. Tawney, 621 F.2d 607 (4th Cir.1980), a corporal punishment case, the court referred to this as
 
 
 13
 the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court. The existence of this right to ultimate bodily security--the most fundamental aspect of personal privacy--is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process.
 
 
 14
 Id. at 613. This Court recently noted that a primary motivation in passing section 1983 was the desire to eliminate the physical violence that was being visited on citizens by those entrusted to keep the peace. Gilmere v. City of Atlanta, 774 F.2d 1495, 1498 (11th Cir.1985) (en banc), cert. denied, --- U.S. ----, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).
 
 
 15
 Here, of course, no physical invasion occurred. The Conners were not at risk of physical harm. The harm the Conners suffered was based on their subjective belief that they were in danger, when in fact they were not. Needless to say, if the Conners were actually in physical danger, the warning by the defendants would have been quite appropriate.
 
 
 16
 In all the cases cited which have allowed a cause of action for mental distress that arose from fear of physical harm, an actual risk of physical harm existed. In Checki v. Webb, 785 F.2d 534 (5th Cir.1986), police officers terrorized the plaintiff by tailgating his automobile at speeds exceeding 100 miles per hour. The court stated that there is no reason for requiring actual physical injury "when a citizen suffers or is seriously threatened with physical injury." Id. at 538. In White v. Rochford, 592 F.2d 381 (7th Cir.1979), children whose uncle had been arrested were left without adult protection in an abandoned automobile on the side of a busy road on a cold evening. The decisive issue for plaintiffs was the unnecessary and unjustifiable exposure to physical danger. Once the constitutional violation had been proven and exposure to physical danger occurred, damages for mental and emotional distress are recoverable. Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).
 
 
 17
 The essence of the Conners' claim is that they have a protected liberty interest in psychological security, which was violated as a result of the good faith effort of police in law enforcement investigation. Although the judgment of the state actors in this scenario may be subject to considerable question, there is no suggestion of bad faith, or that their conduct was for any purpose other than the carrying out of their law enforcement duties. Though the Conners were led to believe that their lives were in danger, this was but the side effect of defendants' actions.
 
 
 18
 Even if the Conners had been the principal target of this police activity, a number of cases have held that a tort law claim of intentional infliction of emotional distress does not give rise to a constitutional deprivation actionable under section 1983. Buikema v. Hayes, 562 F.Supp. 910, 910-11 (N.D.Ill.1983); Stern v. New Haven Community Schools, 529 F.Supp. 31, 34 (E.D.Mich.1981); Taylor v. Nichols, 409 F.Supp. 927, 936 (D.Kan.1976), aff'd, 558 F.2d 561 (10th Cir.1977); Dear v. Rathje, 391 F.Supp. 1 (N.D.Ill.1975), aff'd, 532 F.2d 756 (7th Cir.1976). We need not decide here, however, what claim the Conners might have if the police action had been for the sole purpose of causing them mental distress so as to restrict their activities. It is enough here to hold that there is no protectable constitutional interest to support a claim for damages for mental distress which results from legitimate police activity not intended to cause injury.
 
 
 19
 AFFIRMED.
 
 CLARK, Circuit Judge, dissenting:
 
 20
 I dissent. The majority cannot identify plaintiffs' constitutionally protected interest. I can. To my mind, psychological harassment by the police, whether or not accompanied by a real threat of bodily harm, should haunt us as a society. Such harassment, like actual brutality, is an abuse of power that threatens an individual's right to live in peace. To be free from police activity of this nature is a constitutionally protected interest.
 
 
 21
 Here the state officials undertook to manipulate the plaintiffs' perception of reality to the point that they were afraid to go out of their house. George Orwell in 1984 portrayed the ultimate reach of such manipulation.
 
 
 22
 The majority reasons that the police had a legitimate law enforcement goal. I disagree. It is true that citizens can become victims of police activity which unintentionally goes awry. Here, however, the police intended to mislead the plaintiffs.
 
 
 23
 I cannot place the label of legitimacy on such actions.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation