Donald R. ROVENTINI, and Tammy G. Roventini, individually and on behalf of the Estate of Donald R. Roventini, Jr., Plaintiffs,

v.

PASADENA INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

No. CIV. A. H–96–3945.

United States District Court, S.D. Texas, Houston Division.

Aug. 7, 1997.

Darah Sue Headley, Houston, TX, for Plaintiffs.

David M. Feldman, Feldman and Rogers, Houston, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

Plaintiffs Donald R. and Tammy G. Roventini ("Plaintiffs") have brought this action on their own behalf and on behalf of their deceased son, Donald R. Roventini, Jr., alleging that Defendants are liable for their son's death due to heat exhaustion during a football practice at Dobie High School. Defendants, who include the Pasadena Independent School District ("P.I.S.D."), P.I.S.D. Board of Trustees, P.I.S.D. Superintendent, P.I.S.D. Athletic Director, P.I.S.D. Athletic Trainer, Dobie High School principal, Dobie High School football trainer, and thirteen Dobie High School football coaches, have all moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. The Court has considered Defendants' Motion to Dismiss [Doc. # 59] ("Motion"), Plaintiffs' Response [Doc. # 65], Defendants' Reply [Doc. # 70], all other matters of record in this case, and the relevant authorities. For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN PART. All individuals sued only in their official capacities are dismissed. All other defendants remain parties to this action.

## I. FACTUAL BACKGROUND

On August 14, 1996, Donald R. Roventini, Jr. ("Donald"), a sixteen year–old entering sophomore at Dobie High School, participat-

ed in the first day of the school's fall football practice. According to Plaintiffs, that day's practice, which combined two practices into one, entailed more than four hours of intense outdoor physical activity on a hot and humid summer day in Harris County, Texas. Plaintiffs allege that the Defendant Dobie coaches, who were all present at practice that day, did not attempt to acclimatize Donald or the other players to this extensive hot weather exercise, did not give them sufficient opportunity to rest during the practice, and did not give them enough water and the chance to drink to avoid dehydration. Near the end of the practice, Donald and the other players were required to perform "gasser" conditioning drills, in which they were required to perform two–hundred yard sprints within 45 seconds each.

According to Plaintiffs, at the beginning of the "gasser" drills, Donald complained to the coaches of his discomfort and showed signs of heat exhaustion, heat stroke, and dehydration, but the coaches required him to continue with the drills. In the middle of the drills, Donald collapsed. Donald received no medical assistance after his collapse. Instead of tending to him, Plaintiffs allege, the coaches continued supervising the completion of the "gasser" drills and then held a team meeting a few yards away from Donald. The Dobie football trainer, Michael Foulds, was not on the field at the time. Thus, the only people who attempted to assist Donald were untrained teenage team managers. Donald died within several hours.

In this action, Plaintiffs allege that Defendants are liable under 42 U.S.C. § 1983 for violating Donald's constitutional rights to life, liberty, health, safety, and bodily integrity and to a safe environment protecting him from violations of his rights by state actors. Plaintiffs have sued P.I.S.D., P.I.S.D. Board of Trustees, P.I.S.D. Superintendent, P.I.S.D. Athletic Director, P.I.S.D. Athletic Trainer, and Dobie High School principal (collectively referred to as "P.I.S.D. and the Official Defendants") under § 1983 in their official capacities. Plaintiffs have sued the Dobie High School football trainer and the thirteen Dobie High School football coaches under § 1983 in both their official and per-

sonal capacities. In addition, Plaintiffs have sued the Dobie coaches under Texas state law for negligent discipline.

Defendants have moved for dismissal on several grounds. First, Defendants contend that the constitutional rights that Plaintiffs allege were violated do not exist. Second, Defendants argue that even if Donald did suffer a deprivation of his constitutional rights, P.I.S.D. and the Official Defendants cannot be held liable because Plaintiffs have failed to raise sufficiently specific allegations that the deprivation was due to an official policy or custom; and the Dobie coaches and trainer cannot be held liable in their personal capacities because the allegations against them are not sufficiently specific and because they are protected by qualified immunity. Finally, Defendants contend that the Dobie coaches are statutorily immune, pursuant to Tex. Educ.Code Ann. § 22.051, from Plaintiffs' state law claim for negligent discipline.

## II. *MOTION TO DISMISS STANDARD*

A motion to dismiss should be granted pursuant to Fed.R.Civ.P. 12(b)(6) only when the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Garrett v. Commonwealth Mortgage Corp. of America,* 938 F.2d 591, 594 (5th Cir.1991). A complaint ordinarily need only be a short and plain statement that gives the defendant notice of what the claim is and the grounds upon which it rests. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).[1]

In considering a Rule 12(b)(6) motion, the Court must accept all well–pleaded facts as true and must view those facts in the light most favorable to the plaintiffs. *See Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995). However, legal or unsupported conclusions need not be accepted, nor conclusory allegations taken at face value. *See id.; Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992). " '[T]he com-

---

1. However, for § 1983 claims brought against individuals in their personal capacities, Plaintiffs'

complaint is subject to a heightened pleading requirement. *See infra* Section III.A.3.a.

plaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell*, 43 F.3d at 975 (quoting 3 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1216 at 156–69 (footnote omitted)).

## III. DISCUSSION

### A. Section 1983 Claim

### 1. Existence of Constitutional Right

To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See Leffall v. Dallas Indep. School Dist.*, 28 F.3d 521, 525 (5th Cir.1994). In this action, Plaintiffs allege that Defendants, acting under color of state law, violated Donald's constitutional due process rights to life, liberty, health, safety, and bodily integrity and to a safe environment protecting him from violations of his rights by state actors. Defendants strenuously deny that a student has these alleged due process rights in the context of a public high school football practice.[2]

Specifically, Defendants contend that "no affirmative, constitutional duty of care and protection of students arises in the public school environment." Motion, at 5. In support of this argument, Defendants rely primarily on *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195–98, 109 S.Ct. 998, 1002–05, 103 L.Ed.2d 249 (1989), in which the Supreme Court held that, in the absence of a special relationship in which the state has custody of an individual, the Due Process Clause does not impose an affirmative duty on state actors to protect the individual from injury by others, and on *Walton v. Alexander*, 44 F.3d 1297, 1302–04 (5th Cir.1995) (en banc), in which the Fifth Circuit held that the special relationship described in *DeShaney* does not exist in the context of a residential public school environment. Defendants also cite *Esmeralda v. Partin*, 864 F.Supp. 626 (S.D.Tex.1994), and *Grubbs v. Aldine Indep. Sch. Dist.*, 709

F.Supp. 127, 130 (S.D.Tex.1989), in which courts in this district dismissed claims that defendants had violated schoolchildren's constitutionally protected right to a safe environment in public school.

The Court finds Defendants' reliance on these cases unavailing. In each of these cases, the alleged wrongful conduct was committed by *private actors*, not by governmental or school officials acting under color of state law or pursuant to governmental or school policies. *See Walton*, 44 F.3d 1297 (student was sexually assaulted by another student); *Esmeralda*, 864 F.Supp. 626, 627 (student was sexually assaulted by another student; "Plaintiff has not alleged that she was assaulted by a state actor"); *Grubbs*, 709 F.Supp. 127 (student hurt himself using school equipment). In *DeShaney*, the Supreme Court held that government officials and a local social services agency could not be held constitutionally liable for injuries inflicted on a child by his abusive father after the agency released the child to his father's custody. Throughout its opinion, the Supreme Court repeatedly emphasized that its reasoning applies only to cases in which the alleged harm was committed by private actors. For instance, the Court explained that:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.... It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.* at 195, 109 S.Ct. at 1002–03. Later in its opinion, the Court further explained that the purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other," *id.* at 196, 109 S.Ct. at 1003, and also noted that "[w]hile the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them," *id.* at 201, 109 S.Ct. at 1000. In contrast, in the

---

2. In their Motion, Defendants do not deny that they were acting under color of state law.

case at bar, Plaintiffs allege that state actors themselves caused Donald's injury and death.

Recently in *United States v. Lanier*, the Supreme Court reiterated the narrowness of the *DeShaney* holding by noting that *DeShaney* only limits "the constitutional duty of officials to protect against assault by *private parties.*" *United States v. Lanier*, —— U.S. ——, —— n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997) (emphasis added). The *Lanier* Court made clear that "*DeShaney* does not hold ... that there is no constitutional right to be free from assault committed by state officials themselves outside of a custodial setting." *Id.*

The Fifth Circuit has repeatedly recognized this limitation on *DeShaney*. In *Walton*, the court held that a public school superintendent was not constitutionally liable for a student's sexual assault committed by another student because the plaintiff "was not harmed by the acts of the state or by a state actor; [the plaintiff] was harmed by the acts of a private party." 44 F.3d at 1299. More recently, in *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1414 (5th Cir.1997) (en banc), the Fifth Circuit again noted that *DeShaney* applies only to harms committed by private actors. In *Hillsboro*, the court held that public school officials could not be held liable for a student's rape by a school janitor that occurred in an empty classroom. Although the janitor was an employee of the school, the plaintiffs did not urge, and the court did not find, that the janitor acted under color of state law in raping the student. *See id.*, at 1415–16. In contrast, Plaintiffs at bar assert, and Defendants do

not deny, that Defendants' actions were taken under color state of law.[3] Defendants contend that *Hillsboro* nevertheless controls the outcome of the case at bar because the *Hillsboro* court rejected the plaintiff's state–created–danger theory. *See Hillsboro*, 113 F.3d at 1415. However, in *Hillsboro*, the plaintiff's state–created–danger theory was not, as in the case at bar, that state actors inflicted the harm on the student; instead, the theory was that the state actor put the student in a position in which she was vulnerable to attack by a *private third party.*[4] In the case at bar, in contrast, Plaintiffs assert that state actors themselves, not a third party, caused the injury to Donald.

Having concluded that Defendants are incorrect in urging that *DeShaney* and the other cases described above preclude Plaintiffs' constitutional claim, the Court must next determine whether the law affirmatively recognizes the existence of the constitutional rights Plaintiffs' claim were violated.

In *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir.1994) (en banc), the Fifth Circuit denied summary judgment for a public school principal who failed to protect a student from sexual molestation by her biology teacher and explicitly held that "schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." 15 F.3d at 450.[5] In order to reach this conclusion, the court chronicled the development of substantive due process law by the Supreme Court and the Fifth Circuit and recognized that "[t]he right to be free of state–occasioned

---

**3.** In fact, in *Hillsboro*, the court distinguished an earlier case that had upheld a similar claim on the ground that in the earlier case the employee acted under color of state law. *See Hillsboro*, 113 F.3d at 1416 (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir.1994) (en banc) (discussed *infra* )). In dicta, the *Hillsboro* court nevertheless stated that under the alleged facts, "there can be no recovery even if the janitor were acting under color of state law." *Id.* However, this part of the court's opinion is not relevant to the case at bar because the court stated this conclusion specifically in the context of rejecting the plaintiff's theory that the school officials could be held liable for wrongfully hiring the janitor without first checking his criminal background. In the case at bar, in contrast, Plaintiffs have not alleged any liability for wrongful hiring.

**4.** According to the court, the narrow state–created–danger theory would require that the state actors " 'must have used their authority to create an opportunity that would not otherwise have existed for the *third party's* crime to occur.' " *Hillsboro*, 113 F.3d at 1415 (emphasis added) (quoting *Johnson v. Dallas Indep. School Dist.*, 38 F.3d 198, 201 (5th Cir.1994)).

**5.** In so holding, the court rejected the defendants' argument that, under *DeShaney*, a public school student has no substantive due process right of protection against violations by school employees; the court stated that "[s]uch a view is a serious misreading of *DeShaney* .... *DeShaney* does not suggest that individuals, whether 'under the state's care' or not, have no due process rights against an offending state actor." *Taylor*, 15 F.3d at 451 n. 3.

damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process,'" *id.* at 450–51 (quoting *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981)), in the context of a police officer's malicious infliction of physical injury on a citizen, *see Shillingford;* a public schoolteacher's unjustified tying of a student to a chair for two days, *see Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir.1987); and a public schoolteacher's arbitrary or capricious infliction of corporal punishment on a student, *see Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir.1990). The court concluded that "[i]f the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse . . . by a public schoolteacher." *Taylor*, 15 F.3d at 451.[6]

■ Similarly, in light of this holding, as well as the fact that the Due Process Clause specifically proscribes state deprivations of "*life*, liberty or property without due process of law," U.S. Const. Amend. XIV (emphasis added), this Court concludes that the Constitution protects a schoolchild from deprivation of his bodily integrity and deprivation of his *life* caused by the callous indifference of public school officials. The Court agrees with Plaintiffs that "if the Constitution protects a student from physical abuse by teachers, it must also protect [a student] from being 'run to death'" by his coaches in

an overly strenuous football practice in which he was denied water, rest, and medical attention. Response, at 8. So long as other requirements are met for stating this constitutional claim, the Court holds that Plaintiffs may recover for the injury inflicted on their son.

In opposing the Court's recognition of this constitutional right, Defendants attempt to distinguish *Taylor*, as well as the cases on which the *Taylor* court relied—*Shillingford* and *Jefferson*—from the case at bar. The Court finds Defendants' arguments unpersuasive.

■ First, Defendants attempt to distinguish *Taylor* on the ground that, in that case, the school principal had repeatedly refused to investigate *numerous* reported incidents of sexual misconduct by the biology teacher, and the principal was on notice that a pattern of inappropriate behavior was occurring. In the case at bar, in contrast, Defendants argue that "Plaintiffs have not alleged that any administrator was on notice that football practice had caused harm to any student previously or that allowing Donald to participate in football practice would result in any harm to him." Reply, at 7. The Court rejects this argument. Plaintiffs allege that P.I.S.D. officials were on notice that requiring students to participate in strenuous practice in the summer heat without taking adequate precautions for their health and safety could result in serious harm to the students.[7] The

---

**6.** The Fifth Circuit decided *Doe v. Taylor* en banc, vacating and replacing an earlier panel opinion, 975 F.2d 137 (5th Cir.1992). Defendants contend that in vacating the earlier opinion, the Fifth Circuit implicitly rejected the panel's "holding that school officials have a constitutional duty to protect school children from known or reasonably foreseeable harms occurring during or in connection with school activities." Reply, at 7 n. 3 (citing *Doe v. Taylor*, 975 F.2d at 144). This contention lacks weight. In considering Defendants' Motion, the Court has relied exclusively on the later en banc opinion. Any linguistic differences between the vacated panel opinion and the later en banc opinion are immaterial to this Court's analysis.

**7.** Specifically, Plaintiffs allege that the P.I.S.D. officials "had notice of unsafe conditions" at Dobie football practices, Second Amended Complaint [Doc. # 68] "Complaint," ¶ 62.L., and

> had notice that the football coaches in the School District and the Dobie Coaches in par-

ticular had been continuously and systematically violating the constitutional rights of the football players. However, [the P.I.S.D. officials] took no action nor instituted an investigation nor implemented appropriate procedures in order to safeguard the constitutional rights of . . . the football players.

Complaint, ¶ 65. In support of this allegation, Plaintiffs refer to the regulations promulgated by the University Interscholastic League ("UIL"), which apparently warn school officials of the dangers of hot weather practice and prescribe necessary safety precautions. *See* Complaint, ¶ 30.

In *Taylor*, the Fifth Circuit discussed this notice requirement in the context of *supervisory* liability only. 15 F.3d at 454. Here, Plaintiffs' claims against the Dobie coaches and trainer are not based on any allegation of wrongful supervision. Instead, in these claims, Plaintiffs allege that the coaches and trainer themselves caused Donald's injury and death. In any event, Plaintiffs have also alleged that the

*Taylor* notice requirement does not require the alleged harm to have actually occurred previously;[8] instead, under *Taylor*, it is enough for Plaintiffs to have alleged with sufficient detail that Defendants were on notice that such harm reasonably *could* occur and that they acted with callous indifference in failing to prevent it. The Court holds that Plaintiffs' allegations are sufficient to state a claim for constitutional deprivation and that *Taylor* does not support Defendants' argument for dismissal at this stage.

■ Next, Defendants attempt to distinguish *Shillingford* on the ground that in that case, the plaintiff had alleged that the official's action "was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *See Shillingford*, 634 F.2d at 265. Although this Court is indeed mindful of the *Shillingford* court's admonition that "not every personal hurt by a state officer constitutes a violation of the fourteenth amendment," *id.*, the Court finds that Plaintiffs have alleged sufficiently egregious facts that preclude dismissal at this early stage of the case's development. In their Complaint, Plaintiffs in effect contend that Defendants' actions in requiring Donald and the other players to engage in such an arduous practice in the midst of stifling summer heat, without adequate rest breaks or

water, and the coaches' ignoring of Donald and failure to obtain medical assistance after he collapsed were grossly disproportionate to the need of preparing the players for a winning football season and were inspired by deliberate indifference and callous disregard for Donald and the other players' constitutional rights.[9] Thus, Plaintiffs have raised sufficient allegations to state a claim under the *Shillingford* standard.

■ Finally, Defendants attempt to distinguish *Jefferson* on the ground that, in that case, the schoolteacher had "no suggested justification" in tying a student to a chair for two days. 817 F.2d at 305. In contrast, in the case at bar, Defendants argue that football practice is a justified activity and that Donald was not coerced into participating against his free will, but that he instead willingly volunteered to participate in it as an extracurricular activity. The Court rejects these arguments. Even if football practice itself is a justified activity, this does not mean that *any* actions Defendants might have taken in connection with football practice were necessarily justified. Furthermore, even if, unlike in *Jefferson*, Donald willingly engaged in the activity that led to his injury, this fact does not eliminate his due process right to life and bodily integrity against violations by state actors. In *Taylor*, the Fifth Circuit held that the plaintiff stated a constitutional claim even though the victim apparently voluntarily entered into a sexual relationship with her teacher. *See* 15 F.3d at 447–49.[10] In any event, in the case at bar,

---

coaches and trainer were on notice of the potential dangers of strenuous exercise in hot weather conditions and the risks they were imposing on Donald and the other players. *See* Complaint, ¶ 54.

8. The court described this notice requirement as follows:

> A supervisory school official can be held personally liable for a subordinate's violation of [a] ... student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student ...

*Taylor*, 15 F.3d at 454.

9. Under more recent Supreme Court and Fifth Circuit authority, an allegation of callous or deliberate indifference, rather than malice, is sufficient to support a claim of a constitutional tort. "Deliberate indifference" is required to support a

constitutional claim for failure to train or supervise adequately, *see Doe v. Taylor*, 15 F.3d at 453–54, or for a wrongful hiring decision, *see Board of the County Commissioners of Bryan County v. Brown*, —— U.S. ——, ——–——, 117 S.Ct. 1382, 1391–92, 137 L.Ed.2d 626 (1997); *Hillsboro*, 113 F.3d at 1416. "Callous indifference" is required to support a claim against a state actor who caused the alleged injury for claims not involving such allegations of supervisory liability. *See Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir.1987). In the case at bar, Plaintiffs have alleged "conscious and deliberate indifference" by P.I.S.D. officials, who they maintain have supervisory liability for the coaches' wrongful actions, *see* Complaint, ¶¶ 65–67, and have alleged "deliberate indifference and callous disregard" by the Defendant coaches, *see* Complaint ¶¶ 56–58.

10. Although the Court need not address whether a fifteen year–old student can legally consent to sexual intercourse, *but see Taylor*, 15 F.3d at 467

Plaintiffs have alleged that once students chose to participate in the practice the Defendant coaches threatened them with punitive reprisals if they did not complete the assigned drills, see Complaint, ¶ 42, and that, with respect to Donald in particular, the coaches ordered him to continue practice even after he complained of heat exhaustion, see Complaint, ¶ 43. Plaintiffs have alleged that, given the coaches' roles as authority figures, their disciplinary and other powers over the students, and the punishments that the coaches could inflict,[11] the students did not feel free to stop participating in practice once they had started. See Complaint, ¶ 42 ("while [Donald's] initial attendance at the football practice was voluntary, [Donald] was coerced against his will by the Dobie Coaches into performing the various activities and exercises at the August 14, 1996, football practice").[12] Thus, the Court finds Defendants' attempt to distinguish *Jefferson* unpersuasive.

In sum, Defendants argue that Plaintiffs have merely stated a negligence claim under the guise of a constitutional deprivation and

that, under Fifth Circuit authority, " 'a negligent taking of life is [not] a constitutional deprivation.' " Reply, at 3 (brackets added by Court) (quoting *Young v. City of Killeen, Texas*, 775 F.2d 1349, 1353 (5th Cir.1985)). The Court rejects Defendants' characterization of Plaintiffs' pleading. Plaintiffs' factual allegations and their summary assertion that Defendants acted with callous indifference to Donald's rights amount to allegations of materially more than a negligence claim. Plaintiffs thus have met the pleading requirement for a constitutional tort. See *Lopez*, 817 F.2d at 355 ("allegations of callous indifference are sufficiently within the ambit of purposeful acts to state a claim of constitutional deprivation under § 1983").[13]

### 2. Potential Liability of P.I.S.D.[14]

Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a local governmental entity may be held liable under 42 U.S.C. § 1983 for violations of federal law committed pursuant to a governmental "policy or custom." For purposes of

& n. 5 (Garwood, J., dissenting) (examining legal reasons why "age fifteen [may not be], *per se*, sufficiently immature"), the *Taylor* court's recitation of the facts indicates that, in part and at least initially, the student willingly entered into a sexual relationship with her teacher. See *id.* at 447–49 (after teacher's initial overtures, student "developed a 'crush' " on him and began engaging in a consensual physical relationship; although she initially refused to engage in intercourse, she eventually agreed, and the two maintained a "romantic relationship," which included sexual contact, for several months).

11. The possible punishments included "running sprints or laps around the field, doing push-up[s][sic] or other strenuous exercises, being excluded from try-outs for the team, being 'cut' from the team or demoted to the Junior Varsity team." Complaint, ¶ 41.

12. In any case, Defendants' argument that Donald willingly participated in the football practice does not address Plaintiffs' claim that Donald's due process rights were violated when Defendants failed to assist him or find medical assistance for him after he collapsed. After he collapsed, Donald was certainly no longer voluntarily under the control of the coaches; at that point, he clearly involuntarily depended on them for assistance.

13. Plaintiffs, of course, still must meet their substantial proof obligations. The Court cannot ascertain at this stage whether Plaintiffs' proof will

rise above evidence of one or more Defendants' negligence to the necessary standard of callous indifference or other purposeful conduct.

14. Plaintiffs' official capacity claims against the individual defendants are equivalent to their claim against P.I.S.D. because suing public officials in their official capacities for acts performed within the scope of their authority is equivalent to suing the governmental entity. See *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("[a]s long as the government entity receives notice and an opportunity to respond, an official–capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Thus, the Court dismisses Plaintiffs' official capacity claims against the individual defendants. This dismissal removes entirely from the case the eleven defendants whom Plaintiffs have sued only in their official capacities, including P.I.S.D. Board of Trustees Members Marshall Kendrick, Jr., Bob Blair, Vickie Morgan, Ted Sullivan, Carmen Orozco, Fred Roberts, and Nelda Sullivan; P.I.S.D. Superintendent Rick Schneider; P.I.S.D. Athletic Director Bill Newcomb; P.I.S.D. Athletic Trainer Jon Schmitz; and Dobie High School principal Jerry Speer. As discussed *infra* in Section III. A.3, Plaintiffs' personal capacity claims against the remaining individual defendants, including the thirteen coaches and the Dobie football trainer, Michael Foulds, are not dismissed at this time.

§ 1983, a school district is a local governmental entity. *See Lopez,* 817 F.2d at 353; *Kingsville Indep. Sch. Dist. v. Cooper,* 611 F.2d 1109, 1112 (5th Cir.1980). Thus, in order for Plaintiffs to succeed on their § 1983 claim against P.I.S.D., they must establish that P.I.S.D.'s official policy or firmly entrenched custom caused the alleged constitutional violation. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38; *Gonzalez v. Ysleta Indep. Sch. District,* 996 F.2d 745, 753–54 (5th Cir.1993). An "official policy" is

(1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [school district's] lawmaking officers or by an official to whom the lawmakers have delegated policy–making authority; or

(2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [school district] or to an official to whom that body had delegated policy–making authority.

*See Bryan County,* —— U.S. at ——, 117 S.Ct. at 1388 (1997); *Lopez,* 817 F.2d at 353–54; *Webster v. City of Houston,* 735 F.2d 838 (5th Cir.1984) (en banc).

 In their Motion, Defendants originally argued that Plaintiffs failed to plead with sufficient detail that P.I.S.D.'s alleged violations resulted from an official policy or custom. Thereafter, the Court granted Plaintiffs' Motion for Leave to file a Second Amended Complaint [Doc. # 67], *see* Order [Doc. # 72], in which Plaintiffs specifically allege a number of P.I.S.D. official policies or customs that Plaintiffs claim violated Donald's constitutional rights.[15] The Court finds these allegations sufficiently detailed to meet the requirement of pleading an official policy, as defined above, and thus to state a cause of action against P.I.S.D. Therefore, Defendants' Motion to Dismiss P.I.S.D. is denied.[16]

### 3. Potential Liability of Dobie Coaches and Trainer [17]

#### a. Personal Involvement

 Defendants argue that Plaintiffs have failed to allege specific facts linking each of the Dobie coaches and football trainer with the alleged deprivation of Donald's

**15.** Plaintiffs' Second Amended Complaint include allegations of the following policies and customs on the part of P.I.S.D.: maintaining inadequate safety policies and customs for conducting football practice; failing to enforce UIL safety standards for conducting football practice; failing to maintain proper emergency medical procedures and personnel on the Dobie football practice field; maintaining a football coaching and training staff unable or unwilling to provide proper safety precautions for hot weather football practice; emphasizing football training and victories over football safety; inadequately training and supervising coaching staff to conduct safe practice or recognize the signs of heat-related and over–exercise injuries; and allowing untrained student managers to administer medical care. *See* Complaint, ¶ 62.

**16.** In their Motion, Defendants also argued that Plaintiffs failed to allege that P.I.S.D.'s official policy or custom displayed "deliberate indifference" to Donald's constitutional rights. As noted *supra* note 9, Plaintiffs' Second Amended Complaint alleges the requisite deliberate indifference by P.I.S.D. policy–makers.

Plaintiffs allege that the P.I.S.D. officials "delegated policymaking authority regarding every aspect of the football teams, including the practices and discipline, to the coaches." Complaint, ¶ 64. Because Plaintiffs claim that the P.I.S.D. Board of Trustees themselves had actual or constructive knowledge of the alleged custom, *see* Complaint, ¶ 65, the Court need not determine, at this juncture, whether Plaintiffs' allegation that the coaches had policy–making authority is legally viable. However, the Court notes that whether an official has final policy–making authority is a question of state law. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Under Texas law, final policy–making authority in an independent school district generally rests with the district's board of trustees. *See Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993).

**17.** Plaintiffs have sued the Dobie coaches and trainer in both their official and individual capacities. Because Plaintiffs' official capacity claims are equivalent to their claims against P.I.S.D., those claims are dismissed as to the individual defendants, as noted *supra* note 14, and this section refers only to Plaintiffs' claims against the individual defendants in their personal capacities.

constitutional rights. Under Fifth Circuit law, allegations of constitutional violations against individuals sued in their personal capacities are subject to a heightened pleading standard.[18] Under this standard, such claims may not be pled as conclusory allegations, but instead must allege "specific conduct and actions," *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996), set forth with " 'factual detail and particularity.' " *Jackson v. Widnall,* 99 F.3d 710, 715–16 (5th Cir.1996) (quoting *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.1995) (en banc)). Thus, in order to state a § 1983 constitutional claim against individuals, "[t]he plaintiff[s] must identify defendants who were personally involved in the constitutional violation or whose acts are causally connected to the violation alleged." *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995).

 Defendants contend that "Plaintiffs have asserted claims against twenty–five individuals with almost no indication as to what any defendant's level of involvement might be." Reply, at 12. With respect to the fourteen defendants sued in their personal capacities, the Court disagrees. Plaintiffs allege numerous specific allegations against the thirteen coaches, who were all apparently present at football practice the day of Donald's death.[19] In addition, Plaintiffs specifically allege that the Dobie trainer, Michael Foulds, "was absent from the practice field, in violation of general football coaching standards and UIL safety standards, at the time [Donald] collapsed," Complaint, ¶ 46. Although Plaintiffs do not specify the actions allegedly taken by each coach separately, the Court holds that such level of detail is not necessary for Plaintiffs' claims to survive a Motion to Dismiss under the circumstances of this case. Plaintiffs state that they have been unable to obtain more detailed informa-

tion about each coach's or the trainer's decisionmaking roles or actions the day of the fatal practice. There has been no pre–suit administrative proceeding in which all concerned gave statements, little information was provided in response to Plaintiffs' Open Record Act request, and Defendants have resisted discovery in this case. Thus, the Court finds that Plaintiffs' allegations are sufficiently specific to state a claim against the Dobie coaches and trainer. Whether the allegations are accurate as to each coach and whether the coaches' and trainer's alleged actions and inactions actually caused Donald's injury and death are issues that will be addressed at later stages in the proceedings. *See Lopez,* 817 F.2d at 355. Plaintiffs' allegations have raised the possibility that the Constitution requires more than the Dobie coaches and trainer provided here.

**b. Qualified Immunity**

Defendants also argue that the Dobie coaches and trainer are protected by qualified immunity from Plaintiffs' personal capacity claims. Qualified immunity shields government officials performing discretionary functions from liability for suits brought against them in their personal capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). In examining an official's claim of qualified immunity, courts follow a two–step process. The first step is to ascertain whether the plaintiff alleges "the violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991). The second step is to decide whether the defendant's conduct was objectively reasonable in light of

---

18. This heightened pleading standard does not apply to § 1983 claims against governmental entities or against individuals sued in their official capacities. *See Leatherman,* 507 U.S. at 168, 113 S.Ct. at 1163; *Baker,* 75 F.3d at 195.

19. Specifically, Plaintiffs allege that the coaches chose the conditions of that day's practice schedule; chose to combine two intense practices into one; did not attempt to acclimatize the players to practice in extremely hot weather; did not give the players enough chance to drink water

during the practice; did not provide the players medically trained supervision or ambulatory care on the practice field; subjected the players to unreasonably dangerous "gasser" conditioning drills; ignored Donald's pleas to discontinue the "gasser" drills after he complained and showed signs of heat exhaustion, heat stroke, and dehydration; and failed to tend to Donald after he collapsed on the sideline of the practice field and instead supervised completion of the "gasser" drills and held a team meeting a few yards away. *See* Complaint, ¶¶ 31, 33, 35–38, 43, 47.

the legal rules clearly established at the time of the incident. *See Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir.1996); *Gunaca v. State of Tex.*, 65 F.3d 467, 473–74 (5th Cir.1995).

■■■ Defendants contend that the Due Process Clause does not provide students with a right to freedom from deprivation of life or bodily integrity by public school officials and that therefore there was no clearly established rule at the time of Donald's death that could have put the coaches and trainer on notice that they could be held constitutionally liable for the death of a student participating in football practice. The Court disagrees.

The Fifth Circuit has observed that:

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The term "clearly established" does not necessarily refer to "commanding precedent" that is "factually on all–fours with the case at bar," or that holds the "very action in question" unlawful. Rather, a constitutional right is clearly established if "in the light of pre–existing law the unlawfulness [is] apparent." Put another way, officials must observe "general, well–developed legal principles."

*Taylor*, 15 F.3d at 454–55 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Jefferson*, 817 F.2d at 305). More recently, in *Lanier*, the Supreme Court rejected the position that in order for a constitutional rule to be "clearly established," for purposes of a qualified immunity defense, it must have been previously enunciated in a "fundamentally similar" case. The Court held instead that

[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in

question, even though "the very action in question has [not] previously been held unlawful."

*Lanier*, —— U.S. at ——, 117 S.Ct. at 1227 (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039).

In *Taylor*, the Fifth Circuit concluded that, even though it had never before considered a case precisely on point involving a student who was sexually molested by her public school teacher, "[t]he 'contours' of a student's substantive due process right to be free from sexual abuse and violations of her bodily integrity were clearly established in 1987." *Id.* at 455. Likewise, even though the Fifth Circuit has not yet considered a § 1983 case in which a public school student died, allegedly due to school staff requiring overly strenuous athletic practice and failing to administer medical assistance after the student's collapse, the contours of a student's substantive due process right to be free of "state–occasioned" deprivation of his life and bodily integrity due to public school officials' callous or deliberate indifference were clearly established at the time of Donald's death in August 1996.

■■■ At a pretrial conference and in supplemental briefing, Defendants have argued that, at the time of Donald's death, this right could not have been clearly established because all cases in which courts have recognized an actionable substantive due process claim based on an invasion of bodily integrity have involved "some form of *physical* invasion by a state actor." Letter to the Court from David M. Feldman, attorney for Defendants, dated July 30, 1997 (citing *Conner v. Sticher*, 801 F.2d 1266, 1267–68 (11th Cir. 1986); *Myers v. Troup Indep. Sch. Dist.*, 895 F.Supp. 127 (E.D.Tex.1995)). Although the Court recognizes that a substantive due process claim alleging invasion of bodily integrity by state actors requires physical *injury*, the Court is not persuaded that, in order to be actionable, the "state–occasioned damage," *Shillingford*, 634 F.2d at 265, must involve physical *touching* by the actor.[20]

---

**20.** Moreover, the Court finds it counterintuitive that a young woman's chastity, as in *Taylor*, could be more constitutionally protectable than a young man's life, as here, even if Defendants deprived him of his life without touching him. Again, the Court recognizes that in order to

prevail on their constitutional claim, Plaintiffs must prove that Defendants were not merely negligent but must instead, as in *Taylor*, meet a more difficult intent standard. On the current

In other contexts, courts have recognized violations of bodily integrity even without physical touching. For example, the Fifth Circuit has recognized a violation of substantive due process rights when a state actor, acting with deliberate indifference, denies reasonable medical care for a pretrial detainee or arrestee. *See Nerren*, 86 F.3d at 473. Although the context of a pretrial detainee or arrestee differs from that of a public school student, the Fifth Circuit's recognition of this right demonstrates that bodily integrity may be violated in certain circumstances even without physical touching by the state actor.

In addition, the Court is not persuaded by the authorities Defendants cite in support of their argument that physical touching is required. In *Conner*, the Eleventh Circuit held that the plaintiffs, who alleged that police officers put them in fear that their lives were in danger, did not state a substantive due process claim because they alleged only psychological, not physical injury, and in any case the plaintiffs were not even in real risk of physical harm. The court did not hold, as Defendants impliedly argue, that an invasion of bodily integrity requires, for due process purposes, a physical touching by the state actors.

In *Myers*, a district court in Texas dismissed a case brought by a high school football player who suffered serious bodily injury when he was sent back into a game without medical examination five minutes after he had been knocked unconscious. However, in *Myers*, the court ruled on a motion for summary judgment, not a pre-discovery motion to dismiss. In addition, unlike this Court, the *Myers* court determined that the plaintiff had alleged and demonstrated merely a negligence claim. Thus, the Court concludes that *Myers* is not weighty precedent in this case in its present procedural posture.

Thus, the Court concludes that Plaintiffs have sufficiently alleged the violation of a clearly established constitutional right in or-der to avoid dismissal at this time. In addition, whether any individual coach's or trainer's conduct was objectively reasonable must be assessed in light of factual details not yet available. In sum, the Court concludes that these matters involve analysis not appropriate for resolution at this early stage of the proceedings. *See Taylor*, 15 F.3d at 456 n. 12 ("Deliberate indifference will often be a fact–laden question"). Therefore, the Court denies Defendant coaches' and trainer's qualified immunity claims.[21]

### B. *Negligent Discipline Claim*

█ In addition to their § 1983 constitutional claims, Plaintiffs have also asserted a state law negligence claim against the Dobie coaches. In their Motion, Defendants argue that, pursuant to Tex. Educ.Code Ann. § 22.051, as public school employees they are immune to non–constitutional tort claims brought against them in their personal capacities. This section provides that:

> No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ.Code Ann. § 22.051 (Vernon 1996) (formerly Tex. Educ.Code Ann. § 21.912 (Vernon Supp. 1986)). Despite the apparent plain language of the statute, the Texas Supreme Court has interpreted this provision to include an immunity exception only in cases involving student discipline, not in cases merely involving negligence resulting in bodily injury to students. *See Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617 (Tex.1987); *Barr v. Bernhard*, 562 S.W.2d 844, 848 (Tex.

---

record, the Court is not able to predict whether Plaintiffs will meet their burden.

**21.** In support of their claim of qualified immunity, Defendants cite *Sorey v. Kellett*, 849 F.2d 960 (5th Cir.1988), in which the Fifth Circuit reversed the district court's denial of qualified immunity for a head coach, athletic trainer, and physician in a case in which a football player died after a practice session. However, *Sorey* applied Mississippi's *state statutory immunity* law, which allows immunity for state employees performing certain discretionary functions, rather than federal § 1983 qualified immunity doctrine. Thus, this case is not relevant to the one at bar.

1978). In their Motion, Defendants argued initially that they are immune from the state tort claim because Plaintiffs do not allege that Donald was being punished or disciplined by any of the Defendants prior to his death. In their current Complaint, however, Plaintiffs have now specifically alleged that the coaches' actions in making Donald perform the strenuous exercise, and in particular the "gasser" drills, were disciplinary[22] in nature.[23] Plaintiffs have therefore raised sufficient allegations, which if proven true, would defeat the coaches' assertion of statutory immunity from the state law claim. The Court therefore will not dismiss Plaintiffs' state law negligent discipline claim at this time.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 59] is **GRANTED IN PART** in accordance with this Memorandum Opinion and Order. Defendants P.I.S.D. Board of Trustees Members Marshall Kendrick, Jr., Bob Blair, Vickie Morgan, Ted Sullivan, Carmen Orozco, Fred Roberts, and Nelda Sullivan, P.I.S.D. Superintendent Rick Schneider, P.I.S.D. Athletic Director Bill Newcomb, P.I.S.D. Athletic Trainer Jon Schmitz, and Dobie High School principal Jerry Speer are dismissed. All other defendants remain parties to this action.

---

**22.** "Discipline in the school context ordinarily describes some form of punishment." *Hopkins*, 736 S.W.2d at 619. Negligent discipline can be " 'punishment [which] involves no force, but rather requires some action on the part of the student as a result of which the student suffers bodily injury,' as in ordering the student to run laps." *Id.* (quoting *Diggs v. Bales*, 667 S.W.2d 916, 918 (Tex.App.—Dallas 1984, writ ref'd n.r.e.)).

**23.** Plaintiffs contend that the coaches "were conducting the practice and coercing [Donald] to perform physical exercise in the effort to reform his and the other players' conduct. The Dobie Coaches were attempting to establish their authority with the players and use the practice as a was [sic] to control their behavior," Complaint, ¶ 73; the Coaches "subjected [Donald] to unreasonably dangerous 'gasser' conditioning drills to promote discipline," Complaint, ¶ 38; "All of these ['gasser'] sprints were imposed on the players to discipline slow running and encourage the players to run harder. In short, these sprints were nothing more than a way for the Dobie Coaches to reform the players' conduct by punishing substandard performance and to deter such conduct by the other players," Complaint, ¶ 40.